IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CONNIE DEAN BELCHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14-cv-428 |
| | ) | |
| W.C. ENGLISH INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff Connie Dean Belcher ("Mr. Belcher") brings this action against Defendant W.C. English Inc. ("WCE"), alleging constructive discharge based on age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–34 (2012). Before the Court are WCE's Motion for Judgment on the Pleadings (ECF No. 16) and Motion for Summary Judgment (ECF No. 27); and Mr. Belcher's Motion for Extension of Time within Which to File a Response to Motion for Judgment on the Pleadings (ECF No. 23), along with his three motions related to the filing of an Amended Complaint: (1) Plaintiff's Motion that His Amended Complaint Be Substituted for His Original Complaint (ECF No. 19); (2) Plaintiff's Motion for Extension of Time within Which to File a Motion to Substitute Amended Complaint for Original Complaint (ECF No. 23); and (3) Plaintiff's Motion for Amendment to Order Approving Joint Rule 26(f) Report for

Extension of Time for Amending Complaint (ECF No. 23).[1]  For the reasons below, the Court denies each of Mr. Belcher's motions and grants summary judgment in favor of WCE.

I.      BACKGROUND

WCE has moved for judgment on the pleadings and for summary judgment, both of which require the Court to view the facts in the light most favorable to the non-moving party.  See Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 587 n.3 (4th Cir. 2004) (judgment on the pleadings); Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (summary judgment).  The facts in the light most favorable to Mr. Belcher are as follows:

In April 2012, WCE, a construction company, hired Mr. Belcher as a single-axle truck driver for a highway and bridge construction project.  (Def.'s Mem. 2, ECF No. 28; Dowdy Aff. ¶ 4, ECF No. 28-1.)  Mr. Belcher was sixty-four years old at the time (Compl. at 2–3, ECF No. 2), had extensive experience driving heavy trucks, and held a commercial driver's license (Def.'s Admissions ¶ 4, ECF No. 29-1).  Prior to hiring Mr. Belcher, WCE informed him that the project site had no company-owned dump trucks available at the time.  (Garbee Aff. ¶ 6, ECF No. 28-2.)  Mr. Belcher nonetheless accepted the job, and while waiting for a dump truck to become available, he was assigned to manual labor tasks, which included digging ditches, installing silt fences, and performing sediment control.  (Belcher Dep.

---

[1] Mr. Belcher's four motions are contained in two filings:  (1) Plaintiff's Motion that His Amended Complaint Be Substituted for His Original Complaint (ECF No. 19) and (2) Plaintiff's Motions for Amendment to Order Approving Joint Rule 26(f) Report for Extension of Time for Amending Complaint, for Extension of Time within Which to File a Motion to Substitute Amended Complaint for Original Complaint, and for Extension of Time within Which to File a Response to Motion for Judgment on the Pleadings (ECF No. 23).  The Court will treat these as four separate motions.

16:19–21, 25:8–10, ECF No. 28-3; Garbee Aff. ¶ 8, ECF No. 28-2.)  The physical labor, along with the intense summer heat and lack of available ice water, was difficult for him to handle.  (Pl.'s Opp'n 3, ECF No. 29.)  He repeatedly asked his supervisor when a dump truck would become available (Garbee Aff. ¶ 14, ECF No. 28-2), and his supervisor repeatedly assured him that a truck would arrive the following week.  (See Belcher Dep. 90:13–15, ECF No. 28-3.)  In August 2012, after four months of performing manual labor tasks, Mr. Belcher quit his job.  (Dowdy Aff. ¶ 17, ECF No. 28-1; Belcher Dep. 51:1, ECF No. 28-3.)  He then filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which issued a final agency decision finding no discrimination and informing Mr. Belcher of his right to file suit in federal court.  (EEOC Dismissal, ECF No. 2-1.)

In May 2014, Mr. Belcher filed this lawsuit, *pro se*, alleging that he "had to qui[t]" his job at WCE when the working conditions "got to be to[o] much" and he "couldn't do it anymore" at sixty-four years old.  (See Compl. 2–3, ECF No. 2.)  After filing the Complaint, and after WCE filed its Answer, Mr. Belcher retained counsel.  The parties then filed a Joint Rule 26(f) Report, proposing a deadline of September 30, 2014, for "[a]ll motions for leave to amend the pleadings."  (Joint Report ¶ 6(a), ECF No. 14.)  The Court entered a scheduling order that set September 30th as the due date for amended pleadings.  Neither party sought leave to amend the pleadings by the deadline.  On October 8, 2014, WCE filed a Motion for Judgment on the Pleadings.  Nearly one month later, on November 5, 2014, Mr. Belcher filed an Amended Complaint and a response in opposition to WCE's Motion for Judgment on the Pleadings, although the deadline for responding to WCE's motion had

expired two days previously. (ECF No. 16 (setting response deadline for November 3, 2014); Pl.'s Mem. 5–6, ECF No. 24.) On March 2, 2015, after the close of discovery, WCE filed a Motion for Summary Judgment, which includes a request for attorney's fees and costs.

## II.   PLAINTIFF'S MOTIONS RELATED TO AMENDED COMPLAINT

As a preliminary matter, the Court must decide whether to allow Mr. Belcher's Amended Complaint. In addition to filing his Amended Complaint on November 5, 2014, Mr. Belcher filed a Motion that His Amended Complaint Be Substituted for His Original Complaint on that same date. This was more than one month after the September 30th deadline set in the scheduling order for amending the pleadings. Mr. Belcher did not obtain leave of court or consent of the opposing party to file his Amended Complaint (Def.'s Obj'n ¶ 16, ECF No. 21), as required by Rule 15(a)(2) of the Federal Rules of Civil Procedure. WCE objected to both the Amended Complaint and to Mr. Belcher's Motion that His Amended Complaint Be Substituted for His Original Complaint. (ECF No. 21.) In response, Mr. Belcher filed two additional motions: (1) a Motion for Amendment to Order Approving Joint Rule 26(f) Report for Extension of Time for Amending Complaint [2] and

---

[2] In Mr. Belcher's brief supporting this motion, he appears to request an additional amendment to the order approving the parties' Joint Rule 26(f) Report, based on the fact that the report omits a statement contained in the Local Rules' proposed form for a Joint Rule 26(f) Report. (Pl.'s Mem. 2–3, ECF No. 24.) The proposed form provides that after the dates set forth in the joint report, "the Court will consider, *inter alia*, whether the granting of leave would delay trial." L.R. 16.2. The Court denies Mr. Belcher's request to add this statement to the parties' Joint Rule 26(f) Report because it was not properly made; nor does it affect the issues in this case. In deciding whether to modify the scheduling order, the Court must follow the standards set forth by the Fourth Circuit and the Federal Rules of Civil Procedure, not those articulated in the parties' Joint Rule 26(f) Report.

4

(2) a Motion for Extension of Time within Which to File a Motion to Substitute Amended Complaint for Original Complaint. (ECF No. 23.)

Where, as in this case, a court has entered a scheduling order setting a deadline for amending the pleadings—and that deadline has passed—the party seeking to amend its pleading must clear two hurdles. First, the party must demonstrate "good cause" under Rule 16(b)(4) of the Federal Rules of Civil Procedure to modify the scheduling order. See Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008). Second, the party must obtain either leave of court or consent of the opposing party under Rule 15(a)(2) to amend the pleading. See Cook v. Howard, 484 F. App'x 805, 814–15 (4th Cir. 2012) (per curiam). Though none of the motions filed by Mr. Belcher seeks to modify the scheduling order or seeks leave to file the Amended Complaint, the Court will construe them as requesting this relief.[3]

The Court first examines whether Mr. Belcher has demonstrated good cause to modify the scheduling order. "'Good cause' . . . may be shown if the 'plaintiff uncovered

---

[3] The Court construes Mr. Belcher's Motion for Amendment to Order Approving Joint Rule 26(f) Report for Extension of Time for Amending Complaint (ECF No. 23) as a motion to modify the scheduling order, because the deadline is set forth in the scheduling order, rather than the order adopting the Joint Rule 26(f) Report. The Court also construes Mr. Belcher's Motion for Extension of Time within Which to File a Motion to Substitute Amended Complaint for Original Complaint (ECF No. 23) as a motion to modify the scheduling order, as this motion also seeks an extension of time to amend the complaint. Finally, the Court construes Mr. Belcher's Motion that His Amended Complaint Be Substituted for His Original Complaint (ECF No. 19) as a motion for leave to amend the Complaint, since the Court must grant leave before Mr. Belcher can amend the Complaint. See Stiles v. Collins, No. 5:14-CT-3193-FL, 2014 WL 7336865, at *1 (E.D.N.C. Dec. 22, 2014) (construing a motion "for relief and medical malpractice" as a motion to amend, a "motion to win judgment" as a motion for entry of default, and a "motion for judgment on the pleadings" as a second motion for entry of default); Brown v. Patrick, No. 1:08cv1345 (TSE/TRJ), 2009 WL 8654547, at *1 (E.D. Va. Apr. 20, 2009) (construing a motion asking the court to set aside a dismissal as a Motion for Relief from Judgment).

5

previously unknown facts during discovery that would support an additional cause of action,' or if . . . despite the 'exercise of reasonable diligence,' the evidence supporting the proposed amendment would not have been discovered until after the amendment deadline had passed." Cole v. Principi, No. 1:02CV00790, 2004 WL 878259, at *7 (M.D.N.C. Apr. 22, 2004) (citations omitted) (quoting Forstmann v. Culp, 114 F.R.D. 83, 86 n.1 (M.D.N.C. 1987); Studio Frames, Ltd. v. Village Ins. Agency, Inc., No. 1:01CV876, 2003 WL 1785802, at *2 (M.D.N.C. Mar. 31, 2003)). Mr. Belcher asserts neither of these reasons as a basis for modifying the scheduling order. Rather, he argues that WCE deceived him, whether deliberately or inadvertently, into believing there was no need to file an Amended Complaint. (See Pl.'s Mem. 5, ECF No. 24 (accusing WCE's counsel of "secretly plotting her strategy" to "jettison plaintiff's case on highly technical grounds").) Mr. Belcher's attorney reasoned that since WCE did not file a motion to dismiss pursuant to Rule 12(b)(6) and filed an Answer instead, it was precluded from challenging the Complaint on its face. (See id. at 4–5.) He therefore "felt no urgency about the need to preserve a right to file [an] amended complaint." (Id. at 5.) This reasoning is flawed, as the Federal Rules of Civil Procedure specifically provide that a party may assert the defense of failure to state a claim upon which relief can be granted in a motion for judgment on the pleadings, filed after the pleadings are closed. Fed. R. Civ. P. 12(h)(2)(B), 12(c). WCE's Motion for Judgment on the Pleadings conformed to the Federal Rules, and the fact that Mr. Belcher or his attorney was caught off-guard does not constitute good cause to modify the scheduling order. See Sall v. Bounassissi, No. DKC 10-2245, 2011 WL 2791254, at *3 (D. Md. July 13, 2011) ("[T]he ordinary rule is that simple carelessness, inadvertence, or attorney error does not amount to

6

good cause justifying a modification of the scheduling order."). Moreover, Mr. Belcher waited nearly one month after WCE filed its Motion for Judgment on the Pleadings to file an Amended Complaint. This does not demonstrate the "exercise of reasonable diligence" on the part of Mr. Belcher or his attorney. See Cole, 2004 WL 878259, at *7; DeWitt v. Hutchins, 309 F. Supp. 2d 743, 749 (M.D.N.C. 2004) (finding no good cause when the plaintiffs sought leave of court to amend the complaint three weeks after the deadline).

Mr. Belcher's additional explanations for missing the deadline are similarly unpersuasive. He points out that the Court entered the scheduling order on September 29th, setting the deadline for amending the pleadings for the following day, September 30th. (Pl.'s Mem. 2, ECF No. 24.) He contends he "would have had only one day" to seek an extension of the deadline. (Id.) The deadline, however, should have come as no surprise to Mr. Belcher, as the Court merely adopted the deadline proposed by the parties in their Joint Rule 26(f) Report, filed two weeks previously. Mr. Belcher also points out that during the parties' joint conference, he had initially proposed a later deadline of November 15th, though WCE countered with an earlier deadline of September 30th. (Id. at 5; Email Exhibit 1, ECF No. 21-2.) Mr. Belcher did not object to the earlier deadline. He cannot now claim that his failure to meet the deadline should be excused. Mr. Belcher has thus failed to demonstrate that good cause exists, within the meaning of Rule 16(b)(4), to modify the scheduling order.

Even assuming Mr. Belcher had demonstrated good cause to modify the scheduling order, the Court would deny leave to amend the Complaint under Rule 15(a)(2) because such amendment would be futile. Although Rule 15(a)(2) provides that "[t]he court should freely

7

give leave when justice so requires," futility of the amendment is one basis for denying such leave. See Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986). Liberally construing Mr. Belcher's *pro se* Complaint,[4] the Court can infer a claim for constructive discharge based on age, in violation of the ADEA. While Mr. Belcher's Amended Complaint improves upon the original *pro se* Complaint by citing relevant statutes and explicitly asserting a claim of constructive discharge based on age (see Am. Compl. ¶¶ 3, 13–15, ECF No. 18), the factual allegations are substantially the same as in the *pro se* Complaint and are unlikely to have changed the course of discovery. Thus, the Amended Complaint would not fare any better on summary judgment than the original *pro se* Complaint, and granting Mr. Belcher leave to amend would be "an act of futility." See Steinburg v. Chesterfield Cnty. Planning Comm'n, 527 F.3d 377, 390–91 (4th Cir. 2008) (affirming the district court's denial of leave to amend the complaint based on futility because the amended complaint would not have survived summary judgment); see also Sound of Music Co. v. Minn. Mining & Mfg. Co., 477 F.3d 910, 923 (7th Cir. 2007) ("If the amended claim would not survive a motion for summary judgment, the amendment is futile."); Bauchman ex rel Bauchman v. W. High Sch., 132 F.3d 542, 562 (10th Cir. 1997) ("A court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment."). The Court therefore denies Mr. Belcher's three motions related to the Amended Complaint.

---

[4] A court must liberally construe pleadings that are filed *pro se*, holding them to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam); Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014).

When evaluating WCE's dispositive motions, the Court will consider Mr. Belcher's original *pro se* Complaint to be the operative complaint in this case.

### III. DEFENDANT'S MOTIONS

WCE has filed both a Motion for Summary Judgment and a Motion for Judgment on the Pleadings. A decision on either motion could be dispositive of Mr. Belcher's claim of constructive discharge based on age. The Court elects first to consider the summary judgment motion, since a summary judgment determination would allow for a decision on the merits, unlike a motion for judgment on the pleadings, which "tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims," Drager v. PLIVA USA, Inc., 741 F.3d 470, 474 (4th Cir. 2014). See 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004) (expressing the "federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities").

#### A. Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it might affect the outcome of the litigation, and a dispute is "genuine" if the evidence would permit a reasonable jury to find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the nonmoving party bears the burden of proof on an issue, the moving party is entitled to judgment as a matter of law if the nonmoving party "fail[s] to make a sufficient showing on an essential element

9

of her case." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (noting that a "complete failure of proof" on an essential element of the case renders all other facts immaterial).

The party seeking summary judgment bears the initial burden of "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325. To defeat summary judgment, the nonmoving party must designate "specific facts showing that there is a genuine issue for trial." Id. at 324. The nonmoving party must support its assertions by citing to particular parts of the record, such as affidavits, depositions, answers to interrogatories, and admissions on file. Fed. R. Civ. P. 56(c)(1); Celotex Corp., 477 U.S. at 324.

The role of the court is not "to weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial." Liberty Lobby, 477 U.S. at 249. A genuine issue for trial exists only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Id. "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." Id. at 249–50 (citations omitted). When reviewing a motion for summary judgment, the court must "resolve all factual disputes and competing, rational inferences in the light most favorable" to the nonmoving party. Rossignol, 316 F.3d at 523 (quoting Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996)).

### B. Constructive Discharge

Mr. Belcher claims his resignation amounts to a constructive discharge by WCE under the ADEA. To state a prima facie case of discrimination based on constructive discharge under the ADEA, a plaintiff must demonstrate that "(1) he was constructively

10

discharged; (2) he was at least 40 years old at that time; (3) he was performing his job duties at a level that met [the employer's] legitimate expectations at the time of his constructive discharge; and (4) he was treated more harshly than other similarly situated younger employees." Alba v. Merrill Lynch & Co., 198 F. App'x 288, 294 (4th Cir. 2006). Of the elements required to establish a prima facie case, only the first element—whether Mr. Belcher was constructively discharged—has been raised by the parties and is at issue here. Mr. Belcher's chief complaint is that he was assigned to perform manual labor tasks in extreme heat with no ice water, despite his age and the fact that he was hired as a truck driver. (See Pl.'s Opp'n 3, 6–7, ECF No. 29.)

Constructive discharge occurs when "an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985) (quoting Holsey v. Armour & Co., 743 F.2d 199, 209 (4th Cir. 1984)). When alleging constructive discharge, a plaintiff must prove both deliberateness of the employer's action and intolerability of the working conditions. Id. To prove deliberateness, the plaintiff must show that the employer specifically intended its actions "as an effort to force the employee to quit." Id. The plaintiff can demonstrate deliberateness by presenting actual evidence of the employer's intent "to drive the employee from the job" or circumstantial evidence of such intent, "including a series of actions that single out a plaintiff for differential treatment." Johnson v. Shalala, 991 F.2d 126, 131 (4th Cir. 1993). To prove intolerability, the plaintiff must show that a reasonable person in his position "would have felt compelled to resign," Bristow, 770 F.2d at 1255, meaning "he would have had *no choice* but to resign," Blistein v. St. John's Coll., 74 F.3d 1459, 1468 (4th

11

Cir. 1996). It is insufficient to show "merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign." Id.

As to the element of deliberateness, the Fourth Circuit has made clear that when an employer treats all employees identically, "no particular employee can claim that difficult working conditions signify the employer's intent to force that individual to resign." Bristow, 770 F.2d at 1255. Although Mr. Belcher admits in his deposition that WCE did not target him with harsher conditions than his co-workers, he argues the opposite in his brief. (Compare Belcher Dep. 41:20–42:11, 84:19–22, ECF No. 28-3, with Pl.'s Opp'n 6, ECF No. 29.) To support this argument, he cites a list of differences between himself and the other laborers: that he was hired as a truck driver, he was experienced and qualified to drive trucks and operate heavy equipment, he repeatedly requested to be assigned to truck driving duties, hard labor in 100-degree temperatures was too much for him at his age, and the other laborers were given trucks to drive for periods of time. (Pl.'s Opp'n 6–7, ECF No. 29.) Mr. Belcher views these differences as "instructive and highly supportive of [his] claim, because the deliberateness on the part of the employer can be inferred from 'a series of actions that single out a plaintiff for differential treatment.'" (Id. at 7 (quoting Johnson v. Shalala, 991 F.2d at 131).) While Mr. Belcher's statement of law is correct, his argument is flawed. Differences between Mr. Belcher and the other laborers do not represent actions by WCE, let alone a series of actions that single Mr. Belcher out for differential treatment.

Far from demonstrating WCE's intent to force Mr. Belcher to resign, the evidence indicates the contrary: that WCE intended for Mr. Belcher to remain employed, to work as a

laborer temporarily, and to drive a dump truck once a truck arrived. Throughout Mr. Belcher's four months of employment, WCE paid him a truck driver's wage, rather than a laborer's wage. (Belcher Dep. 80:13–24, ECF No. 28-3.) While he waited for a dump truck, he was allowed to drive various other trucks, including a dump truck before its ignition wires caught fire. (See id. at 7:8–12, 20:2–5, 27:7–11, 33:7–19, 57:3–13.) Further, when a dump truck arrived two weeks after Mr. Belcher quit, his supervisor called to tell him he could come back and drive the truck. (Garbee Aff. ¶ 18, ECF No. 28-2.) Based on this evidence, a reasonable jury could not find that WCE intended its actions as an effort to force Mr. Belcher to quit.[5] The Court, having concluded that Mr. Belcher has failed to make a sufficient showing on the essential element of deliberateness by WCE, need not consider whether working conditions were intolerable for Mr. Belcher due to his age. See Shealy v. Winston, 929 F.2d 1009, 1013 (4th Cir. 1991) ("We need not address the question of the deliberateness of the [employers'] actions because there is a complete failure by [the plaintiff] to demonstrate intolerable working conditions."). The Court therefore grants WCE's

---

[5] Mr. Belcher argues that if WCE had wanted him to stay, it would have tried to make things easier for him by offering to "upgrade" him from manual labor, such as by assigning him to operate a piece of heavy equipment. (Belcher Dep. 9:19–10:13, 35:7–36:7, 89:1–15, ECF No. 28-3.) This request amounts to "a requirement on the employer to provide a reasonable accommodation" for Mr. Belcher's age. See Sauvage v. Snow, 413 F. Supp. 2d 1289, 1301 (M.D. Fla. 2005). "The ADEA, however, imposes no such requirement." Id. WCE was therefore under no obligation to take affirmative steps to make Mr. Belcher's working conditions easier for him, and its failure to do so cannot support a constructive discharge claim. Even under the Rehabilitation Act of 1973, which *does* require federal employers to provide reasonable accommodations for employees with handicaps, the Fourth Circuit has held that failure to accommodate does not necessarily amount to constructive discharge. Johnson v. Shalala, 991 F.2d at 131 ("The consequences of regarding every failure to accommodate an employee as a constructive discharge would be significant.").

Motion for Summary Judgment[6] and denies its Motion for Judgment on the Pleadings as moot.

### C. Defendant's Request for Attorney's Fees and Costs

WCE's request for attorney's fees and costs is denied. The ADEA does not provide for an award of attorney's fees to a prevailing defendant, EEOC v. Clay Printing Co., 13 F.3d 813, 816 (4th Cir. 1994), and this case does not implicate the Court's inherent power to assess attorney's fees against Mr. Belcher, who has not "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," Chambers v. NASCO, Inc., 501 U.S. 32, 45–46 (1991). See generally Davis v. Target Stores Div. of Dayton Hudson Corp., 87 F. Supp. 2d 492, 494–95 (D. Md. 2000) (discussing attorney's fees in the context of the ADEA).

For the reasons outlined herein, the Court enters the following:

**ORDER**

IT IS THEREFORE ORDERED that Plaintiff's Motion that His Amended Complaint Be Substituted for His Original Complaint (ECF No. 19), Plaintiff's Motion for Amendment to Order Approving Joint Rule 26(f) Report for Extension of Time for

---

[6] Mr. Belcher advances two additional arguments related to constructive discharge, neither of which the Court finds persuasive. First, he argues that his manual labor assignment amounts to a demotion. (Pl.'s Opp'n 7, ECF No. 29.) While "[d]emotion can constitute a constructive discharge," Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994), Mr. Belcher does not allege facts to support a demotion. Second, Mr. Belcher erroneously analogizes his reassignment to the facts of J. P. Steven & Co. v. NLRB, 461 F.2d 490, 495 (4th Cir. 1972), where the plaintiff's evidence was sufficient to support a claim of constructive discharge. Mr. Belcher overlooks the fact that the factor driving the plaintiff in that case to resign was not her reassignment but rather a new compensation scheme that made it nearly impossible for her to make minimum wage, let alone her former wage. See id. at 494. Mr. Belcher has not presented evidence of similarly deliberate or intolerable conditions.

Amending Complaint (ECF No. 23), and Plaintiff's Motion for Extension of Time within Which to File a Motion to Substitute Amended Complaint for Original Complaint (ECF No. 23) are DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (ECF No. 27) is GRANTED IN PART, in that the Court grants summary judgment in favor of WCE, and DENIED IN PART, in that the Court denies WCE's request for attorney's fees and costs.

IT IS FURTHER ORDERED that Defendant's Motion for Judgment on the Pleadings (ECF No. 16) and Plaintiff's Motion for Extension of Time within Which to File a Response to Motion for Judgment on the Pleadings (ECF No. 23) are DENIED AS MOOT.

This, the 27th day of July, 2015.

/s/ Loretta C. Biggs  
United States District Judge

15

Case 1:14-cv-00428-LCB-LPA   Document 34   Filed 07/27/15   Page 15 of 15